**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PAUL C. WILLIAMS, | Civil Action No. 08-1210 (RMB) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| THOMAS P. SULLIVAN, et al., | |
| Defendants. | |

**APPEARANCES:**

    Paul C. Williams, Pro Se
    #510437B/535455
    Administrative Close Supervision Unit
    East Jersey State Prison
    Lockbag R
    Rahway, NJ 07065

**BUMB,** District Judge

Plaintiff Paul C. Williams, currently confined at the East Jersey State Prison, Rahway, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the following reasons, Plaintiff's retaliation claim will be permitted to proceed.  The remainder of the complaint will be dismissed, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff may seek to reopen the dismissed claims by filing an amended complaint, in accordance with the Order attached hereto.

## BACKGROUND

The following facts are taken from Plaintiff's complaint.

Plaintiff arrived at the Bayside State Prison ("BSP") in December of 2006.  On March 7, 2007, Plaintiff was assigned to work as a paralegal in the BSP library.  He was paid $4.00 per day, and the law library was opened typically everyday.  Plaintiff would earn about $120.00 each month, and 6 days per month off his sentence for working as a paralegal.

On September 4, 2007, a corrections officer told Plaintiff that he was not going to open the law library, because only paralegals were scheduled, not prisoners.  Claiming he was "denied access" to the library, Plaintiff spoke to the supervising corrections officer, Sergeant Gelsi, about the

closing of the library, and was told that even if paralegals only were scheduled, the library would be open in the future.

Within an hour of his conversation with Gelsi, defendants Dowd, Gonzales, Bland, Flem, and Lamanna summoned Plaintiff to the dayroom. Plaintiff describes what happened as follows:

> When plaintiff went into the dayroom, defendants Gonzales, Bland, Flem, and Lamanna, as well as two additional custody officials who were then assigned to the housing unit, approached and surrounded plaintiff so closely that he could feel their bodies against his back and arms and defendant Gonzales' breath on his face, as defendant Gonzales proceeded to yell at and threaten plaintiff for earlier speaking out about the fact that the law library was not called out; particularly stating: "who the f*** do you think you are, hmm, who the f*** do you really think you are to say anything about what the f*** we do;" "this is our house (pointing to his badge) mother f*****, understand, we do what the f*** we want;" "remember where you're at mother f*****, this is Bayside, we'll f****** kill you;" "if I ever hear that you've challenged us again, I swear I'll have you f***** up so bad that you'll be taking a helicopter ride to the hospital."

(Complt., ¶ 39, offensive words abbreviated). Afterward, Gonzales directed the other defendants to "go toss" Plaintiff's cell. The defendants then:

> commenced to dump out and strew around the cell the contents of every foot locker, storage bin, folder, and food container plaintiff owned, stuffed into and overflowed the toilet with plaintiff's clothes and hygiene items, and poured onto and mixed into plaintiff's clothes, bedding, and many pages of legal material and photographs of his daughter and friends, skin lotion, water, and orange drink mix.

(Complt., ¶ 41).  Plaintiff states that these actions harassed and terrorized him, and that these officers retaliated against him for speaking about the law library to the Sergeant.

The next day, September 5, 2007, defendant Maggioncalda suspended Plaintiff from his paralegal work in the law library and made a referral to the Institutional Classification Committee for Plaintiff to be reassigned to a new job.  (Complt., ¶ 43). On September 12, 2007, Plaintiff was reassigned to "Detail 43," which consisted of trash collection, lawn maintenance, sidewalk scrubbing, and snow removal.  This new job allowed only five days of work per week, at $1.30 per day.  It is the lowest paying job at BSP, and is reserved for inmates being "punished."  (Complt., ¶¶ 45-47).  Plaintiff states that his reassignment to the less favorable job assignment was in retaliation for his talking to the Sergeant about the law library.

Plaintiff asks for monetary and other relief.  Since the filing of this complaint, Plaintiff has been transferred to another prison facility in the state.

## DISCUSSION

**A.   Standard of Review**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir.

1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, ---U.S. ----, ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to puss muster under the Rule 8 pleading standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability

5

>     requirement at the pleading stage[ ]" but . . . "calls
>     for enough facts to raise a reasonable expectation that
>     discovery will reveal evidence of" the necessary
>     element.

Phillips, 515 F.3d at 234 (internal citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice. See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.     Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

>     Every person who, under color of any statute,
>     ordinance, regulation, custom, or usage, of any State
>     or Territory ... subjects, or causes to be subjected,
>     any citizen of the United States or other person within
>     the jurisdiction thereof to the deprivation of any
>     rights, privileges, or immunities secured by the
>     Constitution and laws, shall be liable to the party
>     injured in an action at law, suit in equity, or other
>     proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct

deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.    Plaintiff's Eighth Amendment/Harassment Claims**

Plaintiff alleges facts indicating that he was harassed by defendants.  The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits punishments that are "cruel and unusual."  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain also varies according

to the nature of the alleged constitutional violation.  See Hudson v. McMillian, 503 U.S. at 5.

As the United States Supreme Court has stated, "intentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against "calculated harassment." Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation).  Thus, "it is well settled that verbal harassment of a prisoner, although deplorable, does not violate

the Eighth Amendment." Robinson v. Taylor, 204 Fed. Appx. 155, 156, 2006 WL 3203900 at *1 (3d Cir. 2006)(unpubl.)(citations omitted).

Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. See Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him). However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation. See Douglas, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

Here, Plaintiff's allegations that prison officers were close in proximity to him, and were yelling at him, and even that they threatened him, are insufficient to state a claim under the Eighth Amendment for unconstitutional harassment.

Further, the combined incidents, including the search of his room and reassignment to a new job, do not rise to the level of a constitutional violation. In McKune v. Lile, 536 U.S. 24, 41 (2002), the Supreme Court reminded us that "[c]ourts must decide

9

whether the [facts] are closer to the physical torture against which the Constitution clearly protects or the de minimis harms against which it does not." The harms claimed here are de minimis. Cf. Johnson v. Unknown Dellatifa, 357 F.3d 539 (6th Cir. 2004) (correctional officer repeatedly banged and kicked cell door, threw food tray so top flew off, made insulting remarks, growled and snarled, smeared window so inmate could not see out, jerked and pulled inmate when escorting him); DeMallory v. Cullen, 855 F.2d 443, 445 (7th Cir. 1988) (correctional officer spit on inmate); Trujillo v. Tally, 2005 WL 1847175 (D. Idaho 2005) (guards whistled and faked coughs, refused to allow inmate to use bathroom sometimes, mixed up food before serving it).

In addition, it is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Again, to state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must allege both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting

10

Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. See id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with

11

deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff's allegations including an isolated incident concerning his property and reassignment to a new job are not sufficient to state a claim for unconstitutional conditions of confinement under the Eighth Amendment.[1]

**D.    Plaintiff's Property Claims**

Liberally construing the complaint, Plaintiff alleges facts indicating that his personal property was destroyed in violation of the Fourth Amendment.

---

[1]  The Court notes that an inmate has no property or liberty interest protected by the Constitution in obtaining employment. See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Johnson v. Fauver, 559 F. Supp. 1287, 1290 (D.N.J. 1983).  Any property or liberty interest must be created by statutes or regulations.  See Hewitt v. Helms, 459 U.S. 460, 472 (1983).  While New Jersey law states that "inmates of all correctional . . . institutions . . . shall be employed," courts have held that this language does not create a liberty or property interest in employment for inmates.  See N.J.S.A. 30:4-92; Little v. Terhune, 200 F. Supp.2d 445, 450 & n.4 (D.N.J. 2002)("fact that New Jersey may have granted prisoners access to [educational and work] programs does not necessarily grant inmates a liberty or property interest in them"); Johnson, 559 F. Supp. at 1290-91 (statutory scheme does not "create a liberty or property interest in a right to work, despite statutory language that all inmates 'shall be employed'"); Rowe v. Fauver, 533 F. Supp. 1239 (D.N.J. 1982) (despite statutory language, "corrections officials have considerable discretion in providing or not providing work opportunities even where the health, strength and mental capacity of inmate are not involved, and thus inmate did not possess a state-created 'liberty' interest in prison employment").

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action. But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000) (citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

Here, the allegation that corrections officers destroyed personal property from Plaintiff's cell fails to state a claim for deprivation of property without due process. If the action of defendants was unauthorized, as Plaintiff appears to contend, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of

13

property by public employees.  See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, et seq. (2001).  Plaintiff has alleged no facts suggesting that defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J. Admin. Code §§ 10A:1-11.1, et seq. (2001).

Based on the foregoing, this Court will dismiss Plaintiff's deprivation of property claims.

**E.    Plaintiff's First Amendment/Retaliation Claims**

Plaintiff alleges that his property was destroyed and his job reassigned in retaliation for him speaking to the Sergeant about the law library closing.  Plaintiff's complaint to the Sergeant was approximately an hour prior to the property destruction, and a day prior to his job reassignment.  As noted, defendants verbally harassed Plaintiff indicating that the reason was because of his "challenging" them by speaking to the Sergeant.

In order to state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal

relationship between the two." See Adegbuji v. Green, 2008 WL 2083142 (3d Cir. May 19, 2008)(slip copy) (quoting and citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at *3 (quoting Rauser, 241 F.3d at 334).

In this case, Plaintiff has alleged facts sufficient to withstand sua sponte dismissal of his retaliation claims. The defendants involved in the alleged retaliation will be ordered to answer these claims.

**F.   No Respondeat Superior Liability**

Plaintiff seeks to sue six individuals employed at BSP: Thomas P. Sullivan, Administrator; Adrienne Barge, Associate Administrator; Andrea Kinchen, Assistant Superintendent; Donna Klipper, Assistant Superintendent; Nicholas Melfi, Assistant Superintendent; and Craig Smith, Correction Chief. Plaintiff states that these individuals were "legally responsible for the operation of BSP and the welfare of plaintiff." (Complt., ¶¶ 5-10). Plaintiff states that these defendants were "deliberately

indifferent to prevalent policy, practice, and custom of subjecting BSP prisoners, or causing BSP prisoners to be subjected, to adverse actions . . . ."  (Complt., ¶¶ 53-55).

However, Plaintiff alleges that the named defendants are liable, not because they had any personal involvement in the alleged incidents, but because they are "responsible" for running the institution and assuring that prisoners receive appropriate treatment.  However, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior liability.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of

16

Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Because Plaintiff has not alleged facts indicating that these defendants had personal knowledge of any wrongdoing against him, the claims against these defendants will be dismissed.

## **CONCLUSION**

Based on the foregoing, Plaintiff's retaliation claim will be permitted to proceed.  The remainder of Plaintiff's complaint will be dismissed, without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  In this case, if Plaintiff can correct the deficiencies of his dismissed claims, he may file an amended complaint in accordance with the attached Order.

An appropriate Order accompanies this Opinion.

    s/Renée Marie Bumb
    RENÉE MARIE BUMB
    United States District Judge

Dated: June 30, 2008